# LAW OFFICE OF MOHAMMED GANGAT

(718) 669-0714 ✦ 675 3rd Ave, Ste 1810, NY, NY 10017 ✦ mgangat@gangatpllc.com

<u>VIA ECF</u>                                                                                         January 31, 2019
Hon. Andrew L. Carter, U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      RE:    <u>Maldonado et al v. Boston Road Equipment Rentals, Inc. et al.,</u> No 18-7111-ALC

To the Honorable Judge Carter:

      I am counsel for plaintiffs Richard Maldonado and Ronnie Maldonado ("Plaintiffs") in the above-referenced action (the "Action") and submit this letter jointly with defendants Boston Road Equipment Rentals, Inc. and Lawrence Gritz ("Defendants") seeking the Court's approval of the settlement in this action, as per the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

      This action is a proposed collective action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for unpaid overtime and other amounts due Plaintiffs as a result of the Defendants' alleged violations of wage-and-hour law, including failure to pay overtime, failure to pay spread of hours (i.e., an additional hour of pay for each workday worked in excess of ten hours per day), and failure to provide wage notices and wage statements. Plaintiffs' initial disclosures, which were served on all defendants, calculated that Plaintiff Richard Maldonado was owed $12,249.33 in unpaid overtime and $4,074.00 in spread of hours pay; and that Plaintiff Ronnie Maldonado was owed $25,350.00 in unpaid overtime and $6,500 in spread of hours pay. Each Plaintiff also asserted he was owed liquidated damages, prejudgment interest and attorneys' fees on their unpaid wage claims. Lastly, each Plaintiff asserted he was entitled to $10,000 in statutory penalties for wage notice and wage statement violations.

      A *bona fide* dispute arose when Defendants appeared in this action and disputed the number of hours Plaintiffs claimed they worked. Defendants also raised legal arguments concerning whether the notice and statements they provided were sufficient. Defendants provided documents in support of their position, including payroll records.

      The Court referred the case to mediation for settlement purposes under Local Civil Rule 83.9. A mediator was assigned, Paul Criswell, Esq. Each sided prepared mediation statements and exchanged documents in advance of the mediation. Eventually, after several rounds of negotiation, the parties arrived at a compromise figure of $100,000 to resolve all claims, including attorney's fees and entered into a written agreement to resolve this Action (the "Agreement") that is being submitted to Your Honor for approval. (A copy of the Agreement is attached hereto as **Exhibit A**.)

      Pursuant to the Agreement, the $100,000 will be divided and characterized as follows: $25,000 to Plaintiffs' attorney representing attorneys' fees and expenses incurred in pursuing the

Hon. Andrew L. Carter
Page 2 of 3
January 31, 2019

wage and hour claims; $42,500 to Plaintiff Ronnie Maldonado and $32,500 to Plaintiff Richard Maldonado. This is a fair division of the settlement payment. Only 25% is being allocated to attorneys' fees and expenses which is far less than the standard 33 1/3%.

The Agreement is in line with the mandate from *Cheeks*. Keeping in line with the trend in this Circuit following *Cheeks*, the Agreement contains a limited release, that applies only to claims arising for wages or other compensation arising from Plaintiffs' employment with the Defendants.

There is no confidentiality provision; only a non-disparagement provision where the parties agree not to disparage one another and agree to not say or do anything that would harm the reputation of the other. Importantly, the non-disparagement provisions includes language expressly stating that the parties retain the right to discuss matters related to this legal action with whomever they choose so long as the parties' statements are truthful.

Most importantly, and unlike the settlement agreement at issue in *Cheeks*, the Agreement is available to Your Honor to explore and to assess whether it was likely the fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel and participated in a mediation conducted by a mediator approved and appointed by the Southern District.

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would otherwise coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 332, 335 (S.D.N.Y. 2012), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

This settlement is unquestionably fair when comparing the potential recovery at trial to the settlement amount. It is also unquestionably fair when considering Plaintiffs are keeping 75% of the settlement proceeds.

Moreover, this is not a case where a settlement came about because of "overreaching" by any party. To the contrary, the settlement was the result of vigorous arm's-length negotiations

occurring over many months, involving counsel and the exchange of documentary evidence. The parties' counsel are experienced and well-versed in wage and hour law and duly counseled their respective clients on the benefits and risks of continued litigation. Settlement at this stage of the case for this amount unquestionably constitutes the most efficient and effective conclusion to this litigation for all parties.

As demonstrated above, the settlement that the parties seek joint approval from this honorable Court is a result of substantial negotiations spanning several months and consists of fair and reasonable compromise by both parties given the risks and costs associated with continued litigation and trial. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

The parties have voluntarily consented to the use of a magistrate judge for all proceedings in this action and to order entry of a final judgment.

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

*/s/Mohammed Gangat*
Mohammed Gangat

cc: All counsel of record (via ECF)